IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEMBERS 1st FEDERAL CREDIT UNION, | : | Civil No. 1:22-cv-00225 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| 206 DESIGN, LLC, and JEFFREY LICHTEL, d/b/a LICHTEL CREATIVE, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Pending before the court is a motion to dismiss filed by Plaintiff/Counterclaim Defendant Members 1st Federal Credit Union ("Members 1st"), seeking to dismiss counterclaims. (Doc. 16.) The court finds that the counterclaims for unjust enrichment and conversion are preempted by the Copyright Act. For this reason, the court will grant the motion to dismiss these counterclaims.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff/Counterclaim Defendant Members 1st Federal Credit Union ("Members 1st") filed a complaint against 206 Design, LLC and Jeffrey Lichtel, d/b/a Lichtel Creative (collectively, "Counterclaim Plaintiffs") on February 15, 2022. (Doc. 1.) The complaint alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114, false advertising and false association under the Lanham Act, 15 U.S.C. § 1125(a), federal trademark dilution under the Lanham Act, 15

1

U.S.C. § 1125(c), and trademark dilution under the Pennsylvania Trademark Statute, 54 Pa.C.S. § 1124. (*Id.* ¶ 1.) The complaint asserts that Members 1st is a federally chartered credit union with headquarters in Mechanicsburg, Pennsylvania. (*Id.* ¶ 8.) Members 1st began a brand evolution and digital transformation campaign in or around August 2017, when it issued a Request for Proposal to various marketing and advertising agencies. (*Id.* ¶ 24.) In October 2017, Members 1st entered into a Letter of Agreement with Merit Marketing, Inc. ("Merit") in which the parties agreed that Merit would provide marketing and advertising services to Members 1st. (*Id.* ¶ 25.)

Jeffrey Lichtel ("Lichtel") is an individual who conducts business as Lichtel Creative. (Doc. 1 ¶ 10.) According to the allegations in the complaint, the Members 1st President and Chief Executive Officer, George Nahodil ("Nahodil"), agreed to meet with Lichtel a few months after Members 1st had already engaged Merit. (*Id.* ¶¶ 26.) Nahodil and Lichtel had a meeting on February 12, 2018. (*Id.* ¶ 28.) Although Nahodil's recollection of this meeting is limited, Counterclaim Plaintiffs represent that Lichtel proposed, among other things, a new Members 1st logo, and the concept of using the "Branding Element," the use of a red square with just "M 1st" in it to identify Members 1st without using the entire name. (*Id.* ¶¶ 29–30; Doc. 11, ¶ 108.) The Branding Element is pictured below:

2



According to the amended answer, Lichtel provided Nahodil with a digital copy of the Branding Element following the meeting on February 12, 2018. (Doc. 11 ¶ 116.) The amended answer asserts that, after the meeting on February 12, 2018, Nahodil asked Lichtel to coordinate a meeting with Mike Wilson ("Wilson"), the current Chief Experience Officer at Members 1st, who was the Senior Vice President of Marketing at the time. (*Id.* ¶ 121.) Lichtel and Wilson met on May 14, 2018. (*Id.* ¶ 123.) At this meeting, Lichtel and Wilson discussed Lichtel's ideas about how the Branding Element could be used by Members 1st. (*Id.*) The parties did not arrange to move forward, and Lichtel was left with the impression that Members 1st was not interested in using the Branding Element or engaging his services. (*Id.* ¶ 124.) Then, on or about August 18, 2020, Members 1st announced its new logo design, pictured below. (*Id.* ¶ 125.)



Notably, the new logo design centered the "M" and changed the font of the "st." (*Id.* ¶ 28.) Since announcing the new logo, Members 1st has used the "M 1st" in the red box, without the full name, as part of their online and mobile banking,

social media presence, television and media presence, and as a physical mark on their corporate headquarters, among other uses. (*Id.* ¶ 131.)

On December 17, 2021, Members 1st accessed Lichtel Creative's website and noted the Branding Element appeared on the website. (Doc. 1 ¶ 35.) In correspondence through counsel, Members 1st learned that Counterclaim Plaintiffs believed that the Branding Element was a novel logo that was misappropriated by Members 1st in its rebranding campaign based on perceived similarities between the new logo design announced by Members 1st and the Branding Element. (*Id.* ¶ 31.) Following correspondence through counsel, Counterclaim Plaintiffs filed a Writ of Summons in the Court of Common Pleas of Cumberland County, Pennsylvania, on February 1, 2022, asserting claims against Members 1st for misappropriation of Counterclaim Plaintiffs' logo and the Branding Element. (Doc. 1 ¶¶ 31–32.) Members 1st then filed the instant complaint on February 15, 2022. (Doc. 1.) The complaint sets forth claims of infringement under 15 U.S.C. § 1114, unfair competition, false advertising, and false association under the Lanham Act, 15 U.S.C. § 1125(a), federal trademark dilution under 15 U.S.C. § 1125(c), and dilution under 54 Pa.C.S. § 1124. (*Id.*)

On March 25, 2022, Counterclaim Plaintiffs answered and raised counterclaims against Members 1st. (Doc. 11.) The counterclaims allege unjust enrichment and conversion. (*Id.*) Members 1st filed its motion to dismiss

Counterclaim Plaintiffs' counterclaims on April 15, 2022 and timely filed the brief in support on October 7, 2022.[1] (Docs. 16, 32.) Counterclaim Plaintiffs filed their brief in opposition on October 31, 2022. (Doc. 38.) Finally, Members 1st filed its reply brief on November 14, 2022. (Doc. 39.) Thus, this motion is ripe for review.

## JURISDICTION

The court has federal question jurisdiction over the complaint, as it asserts claims under federal law. *See* 28 U.S.C. § 1331. This court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367 because those claims are part of the same case or controversy as the claims to which this court has original jurisdiction. Venue is proper under 28 U.S.C. 1391.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to

---

[1] On May 11, 2022, the court granted an unopposed motion to stay while the parties engaged in discussions regarding the potential for an amicable resolution. (Doc. 20.) The stay was lifted on September 23, 2022, and the court ordered Members 1st to file their brief in support within fourteen days. (Doc. 30.) Thus, the brief in support was timely filed on October 7, 2022.

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

In the counterclaim for unjust enrichment, Counterclaim Plaintiffs aver that Members 1st took the proposed Branding Element that they prepared and appropriated it when developing its brand evolution. (Doc. 11 ¶¶ 136–37.) Counterclaim Plaintiffs specifically claim that the concept of using a red square with just the "M 1st" inside of it–the Branding Element–making Members 1st identifiable without the need for the entire name as the appropriated element. (*Id.* ¶¶ 108–09.) Counterclaim Plaintiffs allege that Members 1st has appreciated the benefits of the Branding Element without compensating them for its use. (*Id.* ¶ 139.) Counterclaim Plaintiffs assert that they have suffered injuries and damages caused by Members 1st's unjust enrichment. (*Id.* ¶ 144.) In their second claim, Counterclaim Plaintiffs allege that they have suffered injuries and damages caused by Members 1st's conversion of the Branding Element. (*Id.* ¶ 148.) Counterclaim

Plaintiffs allege that Members 1st converted their property, in the form of the Branding Element, and appropriated it through attempts to control the use of it. (*Id.* ¶ 147.)

### A. Preemption Standard

In the motion to dismiss, Members 1st argues that the counterclaims are preempted by the Copyright Act. (Doc. 32, p. 6.)[2] Specifically, Members 1st points to Section 301 of the Copyright Act:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 U.S.C. § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 U.S.C. §§ 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Therefore, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Members 1st argues that the counterclaims are precluded because the Branding Element is copyrightable, and Counterclaim Plaintiffs seek redress for rights equivalent to those protected by the Copyright Act.

Courts within the Third Circuit have adopted a two-part test to determine whether Section 301 of the Copyright Act preempts state law. *Four Quarters Interfaith Sanctuary of Earth Religion v. Gille*, No. 19-cv-12, 2019 U.S. Dist.

---

[2] For ease of reference, the court utilizes the page numbers in the CM/ECF header.

LEXIS 21516, *12 (W.D. Pa. Feb. 11, 2019); *see also Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 420–21 (W.D. Pa. 2008). A party moving for dismissal must demonstrate that "(1) the work in question falls within the type of works protected by the Copyright Act; and (2) the state law seeks to enforce rights that are equivalent to any of the exclusive rights of copyright found in Section 106 of the Copyright Act." *Tegg Corp.*, 650 F. Supp. 2d at 420-21.

In this case, Members 1st argues that the Branding Element is copyrightable material and that the state-law rights asserted in the counterclaims are equivalent to the rights protected by the Copyright Act. Counterclaim Plaintiffs argue that the Branding Element is simply a solid red square, which is not distinctive and, therefore, not protectable under the Copyright Act.

### B. Prong One: Whether the Work at Issue is Copyrightable

The first prong of the two-part test asks whether the work at issue is copyrightable. *Four Quarters*, 2019 U.S. Dist. LEXIS 21516 at *13. The Copyright Act protects original works of authorship, separated into the following categories: "(1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works." 17 U.S.C. § 102(a). Whether a party has actually registered a work under

the Copyright Act does not factor into the court's analysis under this prong; rather, the court considers whether the work is the "appropriate subject of a copyright." *Four Quarters*, 2019 U.S. Dist. LEXIS 21516 at *14.

Members 1st argues that the Branding Elements is copyrightable as a graphic work. (Doc. 32, p. 17.) Counterclaim Plaintiffs contend that the Branding Element is simply a red square, which is not a distinctive graphic work. (Doc. 38, p. 10.) They then point to tests for distinctiveness used by the United States Patent and Trademark Office to support their argument that the red square is not copyrightable material. (*Id.* at 6–7.) The Patent and Trademark test for distinctiveness, however, is not the test that the court applies to analyzing whether the work is *copyrightable*. Distinctiveness is a consideration when the court considers patent and trademark material, but patent and trademark considerations are not part of the copyright analysis. Here, the court analyzes whether the Branding Element is copyrightable under one of the categories established in the Copyright Act.

Counterclaim Plaintiffs argue that the Branding Element consists only of "a generic solid red square." (Doc. 38, p. 7.) This argument, however, contradicts the language of the counterclaims themselves as set forth in the amended answer. The amended answer makes it clear that what they believe was misappropriated was the Branding Element, the use of a red square with "M 1st" in it, and the use of the

9

Branding Element as a way to make Members 1st identifiable without the need for the entire name.  (Doc. 11 ¶ 107–08.)  Additionally, the counterclaims state that "[Counterclaim Plaintiffs] presented the Branding Element to Members 1st…" and that Members 1st took the Branding Element and "appropriated the same for their use."  (Doc. 11 ¶¶ 134, 136.)  The language of these claims clearly suggests that Counterclaim Plaintiffs presented Members 1st with the entire image of the Branding Element, not simply a red square, as well as the idea of its use to identify Members 1st with the Branding Element.  Further, Counterclaim Plaintiffs claim that Members 1st took and appropriated various aspects of the overall Branding Element, including ideas and concepts, not just the red square.  The court cannot limit its analysis to the red square for the purpose of resolving the motion to dismiss when the counterclaims refer to the overall Branding Element, which has been defined by Counterclaim Plaintiffs to include more than a generic solid red square.

 Graphic works are "works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans."  17 U.S.C. § 101.  When a work has mechanical or utilitarian use, its design "shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and

are capable of existing independently of, the utilitarian aspects of the article." *Id.* In this case, the logo itself is a work of graphic art, and its utilitarian use as a logo exists independently of its design features. Thus, the court finds that the Branding Element is a graphic work. As a graphic work, the Branding Element is protectable under the Copyright Act. Therefore, the first prong is satisfied.

### C. Prong Two: Whether the State-Law Rights Asserted Are Equivalent to the Rights Protected by the Copyright Act

Once the court has determined that the work in question is copyrightable, it then evaluates whether the state-law rights asserted are equivalent to the rights protected by the Copyright Act. *See Four Quarters*, 2019 U.S. Dist. LEXIS 21516 at *15–16. The Copyright Act protects various exclusive rights, including the right to distribute, reproduce, and display a work, as well as the right to produce derivative works. 17 U.S.C. § 106.

To determine if state-law rights asserted are "qualitatively different" from the federal-law rights in the Copyright Act, the Third Circuit has adopted the "extra element" test. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217–28 (3d Cir. 2002). Under the extra element test, if an extra element is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption." *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 716 (2d Cir.

11

1992) (citations omitted).  However, even when an extra element is found, "[n]ot every extra element is sufficient to establish a quantitative variance between rights protected by federal copyright law and that by state law." *Dun & Bradstreet*, 307 F.3d 197 at 218 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164-65 (1st Cir. 1994)).

Members 1st argues that the counterclaims for unjust enrichment and conversion assert rights equivalent to rights protected in the Copyright Act. Counterclaim Plaintiffs do not address this second prong in their brief in opposition.

### 1.  Count I – Unjust Enrichment

Counterclaim Count I asserts a common law cause of action for unjust enrichment.  A claimant pleading unjust enrichment "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985).  In support of their claim for unjust enrichment, Counterclaim Plaintiffs assert that Members 1st appropriated the Branding Element for its use and appreciated the benefits of the Branding Element to their expense and detriment.  (Doc. 11 ¶¶ 8–10.)  Members 1st argues that these claims are

preempted by the Copyright Act's protection from use and imitation of protected work.

The Copyright Act explicitly protects the rights to reproduce, prepare derivative works, and distribute copyrightable material. 17 U.S.C. § 106. The Third Circuit Court of Appeals has not yet ruled on whether unjust enrichment claims are preempted by the Copyright Act, but district courts within the Third Circuit have consistently held that unjust enrichment claims are preempted. *See Visual Communs., Inc. v. Assurex Health, Inc.*, No. 14-cv-3854, 2014 U.S. Dist. LEXIS 131495, at *25 (E.D. Pa. May 9, 1995) ("[a]mong courts within the Third Circuit, it is clearly established that an action for unjust enrichment is preempted by copyright law because unjust enrichment seeks to compensate the plaintiff for the alleged use and imitation of her protected artwork, which rights are protected by copyright law.") (internal quotation omitted); *see also The Scranton Times, L.P. v. Wilkes-Barre Publ'g Co.*, No. 08-cv-2135, 2009 U.S. Dist. LEXIS 17278, at *21–22 (M.D. Pa. Mar. 6, 2009) (holding that the plaintiff's unjust enrichment claim was preempted by the Copyright Act because "Defendant has copied and distributed Plaintiff's work product to the detriment of Plaintiffs…"); *FedEx Ground Package Sys. v. Applications Int'l Corp.*, No. 03-cv-1512, 2008 U.S. Dist. LEXIS 107896, at *40 (W.D. Pa. Sept. 12, 2008) (noting that Third Circuit district courts "have consistently held that an action for unjust enrichment is preempted by

copyright law."); *Curtin v. Star Editorial, Inc.*, 2 F.Supp. 2d 670, 674–75 (E.D. Pa. 1998) (holding that a plaintiff's claim for unjust enrichment was preempted by the Copyright Act "to the extent that plaintiff asserts an exclusive right to and reimbursement for the use of his compilation of photographs…"); *Long v. Quality Computers & Applications, Inc.*, 860 F.Supp. 191, 197 (M.D. Pa. 1994) (affirming that unjust enrichment a state-law action that is equivalent to the Copyright Act, and is therefore preempted). Based on this persuasive precedent, the court holds that unjust enrichment claims lacking an extra element are preempted by the Copyright Act.

Here, the unjust enrichment claim pleads only that Counterclaim Plaintiffs suffered injuries and damages as a result of Members 1st appropriating and using their copyrightable Branding Element. The pleadings suggest nothing additional that would establish an extra element to extend beyond the Copyright Act. Therefore, Count I is preempted by the Copyright Act.

    2. **Count II – Conversion**

Counterclaim Count II asserts a common law cause of action for conversion. Under Pennsylvania law, conversion is "an act of willful interference with the dominion and control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." *Gemel Precision Tool Co., Inc. v. Pharma Tool Corp.*, No. 94-cv-5305, 1995 U.S. Dist.

LEXIS 2093, at *6 (E.D. Pa. 1995) (citing *Baram v. Farugia*, 606 F.2d 42, 43 (3d Cir. 1979)).  A party claiming conversion must show that the "defendant deprive[d] the plaintiff of his right to a chattel or interfere[d] with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification."  *Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003).

Although the Third Circuit Court of Appeals has not yet ruled specifically on whether conversion is preempted by the Copyright Act, district courts within the Third Circuit have found that conversion claims regarding copyrightable property are preempted by the Copyright Act.  *Tegg Corp.*, 650 F. Supp. 2d at 432 (holding that, consistent with holdings of other district courts within the Third Circuit, a conversion claim related to the alleged use of the plaintiff's software was preempted by the Copyright Act because there was no physical object required to use the software).  In looking for an extra element, courts have held that the "deprivation" component of conversion may be enough to establish an extra element beyond the Copyright Act.  *Scranton Times, L.P.,* 2009 U.S. Dist. LEXIS 17278, *17–18 (holding that a conversion claim was not preempted because the plaintiff pleaded an extra element that took the claim beyond the scope of the Copyright Act).  Courts will consider the ability to tangibly deprive possession of a work in the deprivation analysis, with courts noting that "tangible possession, such

15

as a manuscript, may be subject to conversion; yet an intangible work, such as a poem printed on a manuscript, is subject to copyright infringement." *Tegg Corp.*, 650 F. Supp. 2d at 433.

In the case at bar, the counterclaims refer to the Branding Element as an intangible copyrightable work rather than a physical chattel. Although the logo itself is a physical graphic design, Counterclaim Plaintiffs refer to the Branding Element as their "marketing and graphic design *ideas*" (Doc. 11 ¶ 104) (emphasis added), and state that they presented "the *concept* of Members of [*sic*] using a red square with just the 'M 1st'…" (*Id.* ¶ 108) (emphasis added). Counterclaim Plaintiffs do not plead the use of the "physical embodiment" of the Branding Element, but rather the use of the intangible ideas and concepts that made up the Branding Element *in addition* to the logo itself. *Tegg Corp.*, 650 F. Supp. 2d at 433. Such allegations of appropriation of an intangible Branding Element for pecuniary benefit without consent are "another way of claiming copyright infringement." *Visual Communs.*, 2014 U.S. Dist. LEXIS 131495 at *24. Therefore, Count II is likewise preempted by the Copyright Act.

## CONCLUSION

For the reasons stated herein, the court finds that the counterclaims are preempted by the Copyright Act.[3]  The court will therefore grant the motion to dismiss counterclaims filed by Members 1st.  An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: March 24, 2023

---

[3] While the court notes that there are three counterclaims in the amended complaint, because Count III is a request for declaratory relief, the court does not address it as a standalone claim.